```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - -
                              x
UNITED STATES OF AMERICA      :
                              :
      -  v.  -                :
                              :     Sentencing Memorandum
ALBERT D. CHANG, JR.,         :
                              :     08 Cr. 44 (DLC)
            Defendant.        :
                              :- - - - - - - - - - - - -
                              :
                              x
```



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 17, 2008

*BY ELECTRONIC FILING AND FEDERAL EXPRESS*

Hon. Denise L. Cote
U.S. District Court Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Room 1040
New York, NY 10007-1312
(212) 805-5053

      Re:  United States v. Albert Chang, Jr. (08 Cr. 00044 (DLC))

Dear Judge Cote:

      The government respectfully submits this letter in connection with sentencing in the above referenced matter, which is currently scheduled for April 18, 2008.

**I.      BACKGROUND**

      On January 15, 2008, Albert Chang, Jr. plead guilty to a one count criminal information that charged him with aiding and assisting in the preparation of 30 false and fraudulent tax returns in violation of 26 U.S.C. § 7206(2).  Chang pled guilty pursuant to a written plea agreement.

**II.     STATEMENT OF FACTS**

      Albert Chang, Jr. operated a tax return preparation business from his residence at 2911 Yates Avenue, Bronx, New York during the years 2001, 2002 and 2003.  Chang prepared federal and state income tax returns for clients and accepted payments for his services at that location. As a tax professional at all relevant time periods, Chang was well aware of the requirements of the tax laws, i.e., that tax returns could not report expenses and business losses which the taxpayer had not, in fact, incurred.

      From 2001 through 2003, Chang engaged in a pattern of including greatly inflated or

fabricated deductions and losses on the income tax returns he prepared for his clients. In several instances Chang also created false Forms W-2 which inflated the amount of wages the client had earned and the amount of income tax which had been withheld from those wages. The information focuses on fifteen clients of Chang's tax preparation business. The majority of the clients met with Chang personally and provided him with any tax forms they had received, such as Forms W-2.[1]
 Chang did not ask for any information related to deductions that the clients may have been entitled to claim on their income tax returns, such as unreimbursed employment-related expenses. None of the clients provided Chang with any information related to any such expenses. Despite this fact, all but one of the returns referenced in the information include fictitious deductions for unreimbursed job related expenses such as mileage and other transportation related expenses. Further, only two of the clients provided Chang with information regarding the income and expenses of a sole proprietorship they owned. In each of these instances, the business loss reported on their returns greatly exceeded the actual losses sustained by the business. Of the remaining returns charged in the information, all but two reported losses purportedly generated by businesses that the client has stated simply did not exist. These clients further relate that they had no discussions with Chang regarding their ownership or operation of a sole proprietorship. Five of the returns included in the information (prepared for three different clients) reported falsely inflated wages and income tax withholdings. Two of these clients relate that they provided accurate Forms W-2 to Chang, while the third stated that did not earn any wages during the year at issue. The tax loss associated with the falsification of these 30 returns is $148,589.

### III.    SENTENCING GUIDELINES COMPUTATION

Initially, it must be determined which Guidelines Manual is to be applied in calculating Chang's sentencing range. Generally, the guidelines in effect at the time of sentencing should be used, unless their application results in a potentially harsher sentence, in which case the guidelines in effect at the time of the offense should be applied. See United States Sentencing Commission, Guidelines Manual, §1B1.11 (Nov. 2001). The most recent offense for which Chang was convicted occurred in 2004. There have been no substantive changes to the guidelines manual that are relevant to the instant offenses of conviction since 2001; therefore, the applicable guidelines manual is the Guidelines Manual of November 1, 2007, the manual that will be in effect at the time of sentencing.

#### A.    Base Offense Level

The base offense level for Chang is determined by referencing the Guidelines section applicable to the offense of conviction. The guideline section which applies to the offense of aiding and assisting in the filing of false tax returns is 2T1.4, Aiding, Assisting, Procuring, Counseling or Advising Tax Fraud. The base offense level under §2T1.4 is the level determined by applying §2T4.1 (Tax Table) to the tax loss. The base offense level for these offenses correlates to the total

---

[1] Two of these clients did not meet with Chang personally, but provided their tax information to another client who brought the documentation to Chang, and were aware that Chang was their return preparer.

"tax loss" caused by the defendant's conduct for which he was convicted and all relevant conduct, as defined in §1B1.3.  In the written plea agreement, the parties stipulated that the total tax loss for sentencing guidelines purposes is $432,769, based on the following analysis:

### 1.     Calculations for Offense of Conviction

Section 2T1.1 defines "tax loss" as "the amount of tax that the taxpayer owed and did not pay."  With respect to the returns included in the information, the special agent determined the correct tax liability after eliminating the false deductions and losses claimed on each return.  The corrected tax liability figures were then compared with those reflected on the returns included in the information which had been filed with the IRS.  Based upon this comparison, the special agent concluded that Chang's falsification of the 30 returns included in the information resulted in a tax loss of $148,589.

### 2.     Relevant Conduct

The guidelines specifically instruct the court to consider relevant conduct in determining the total tax loss for sentencing purposes.  "In determining the total tax loss attributable to the offense (see §1B1.3(a)(2)), all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan, unless the evidence demonstrates that the conduct is clearly unrelated."  USSG §2T1.1, comment. (n. 2).  Under §1B1.3 it is appropriate for the court to consider even uncharged conduct which is part of the same course of conduct or common scheme or plan as the offense of conviction as relevant conduct for purposes of determining the defendant's offense level.  See U.S. v. Watts, 519 U.S. 148, 156-57 (1997); U.S. v. Cordoba-Murgas, 233 F.3d 704, 708 (2d Cir. 2000); United States v. Pierce, 17 F.3d 146, 150 (6th Cir. 1994) ("For sentencing purposes the use of tax loss resulting from uncharged conduct is authorized by § 1B1.3, the 'relevant conduct' provision of the Guidelines"); United States v. Harvey, 996 F.2d 919, 921-22 (7th Cir. 1993) (including loss resulting from uncharged false tax return, noting that "[t]ax offenses, like embezzlements and drug crimes, fall within the rule that relevant conduct includes the whole scheme").  Tax harm from relevant conduct is included if the government can show by a preponderance of the evidence that the conduct was committed by the defendant and the conduct was part of the same course of conduct or common scheme or plan.  See USSG § 1B1.3(a)(2).

Moreover, the Sentencing Guidelines specifically recognize that, as with loss associated with other fraudulent conduct, "[i]n some instances, such as when indirect methods of proof are used, the amount of the tax loss may be uncertain."  USSG § 2T1.1, Application Note 1.  A sentencing court is permitted to make "a reasonable estimate based on the available facts' where the exact amount of tax loss may be uncertain."  United States v. Bryant, 128 F.3d 74, 76 (2d Cir. 1997)).

The special agent interviewed six additional clients whose returns were prepared by Chang, but who had no direct contact with Chang.  Based on the statements of these clients that they had not incurred expenses or losses similar to those claimed on the charged returns, the special agent computed an additional tax due of $78,007 on the 13 tax returns prepared by Chang for these clients.

The IRS conducted correspondence audits on returns that Chang prepared for other clients for the year 2003. The IRS was able to target Chang's returns by using the IP address of the computer from which the returns were filed. Once these returns were targeted, the IRS sent correspondence to the taxpayers questioning the validity of the deductions on their income tax returns. In connection with 72 of the audits, the clients agreed that they were not entitled to the claimed deductions. The IRS determined that the tax loss caused by the false deductions on these 72 returns was $206,173.

### B.  Base Offense Level Calculation

The total federal tax loss, including relevant conduct, is $432,769. A tax loss of more than $400,000 but less than $1,000,000 corresponds to an offense level twenty. USSG §2T4.1.

### C.  Enhancement for Being in the Tax Return Preparation Business

Pursuant to USSG §§ 2T1.4(b)(1)(A) and (B), the offense level is increased by two levels because the defendant committed the offense as part of a pattern or scheme from which he derived a substantial portion of his income, and the defendant was in the business of preparing or assisting in the preparation of tax returns. The defendant's offense level is therefore raised to twenty-two.

### D.  Acceptance of Responsibility

Pursuant to USSG §3E1.1(b), a 2-level reduction is warranted based upon the defendant's acceptance of responsibility. Furthermore, an additional 1-level reduction is warranted, pursuant to USSG § 3E1.1(b), because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. The defendant's offense level is therefore reduced to nineteen.

### E.  Criminal History

Based upon the criminal history information provided by the Probation Office and the defendant, it appears that the defendant has one criminal history category point pursuant to §4A1.1(c). This is based upon a 2004 misdemeanor conviction of reckless endangerment. The record of conviction shows that the defendant was sentenced to a fine and one-year conditional discharge on May 14, 2004, after the conduct that gives rise to the counts of conviction in this case. One criminal history category point equates to a Criminal History Category of I.

### F.  Supervised Release

As Chang was convicted of a Class D felony, the maximum term of supervised release following imprisonment is three years. 18 U.S.C. § 3583(b); see also USSG §5D1.2(a)(2) (calling for a term of supervised release of at least 2 years, but not more than 3 years). The government recommends a three year term of supervised release for the defendant.

G. **Restitution and Fine**

The plea agreement provides that "the defendant agrees that the Court shall impose an order of restitution in the amount of the taxes, penalties and interest due on the tax returns prepared for clients of the defendant's tax preparation business to the extent that the clients have not paid or made arrangements to pay those amounts to the IRS." Here, the IRS has determined that the defendant's clients have $16,591 in outstanding taxes, penalties and interest, as set forth in the attachment to this letter. The defendant should be held jointly and severally liable with the taxpayer to the IRS for that amount.

The government also recommends the imposition of a fine within the guidelines range. For an offense level of 22, the Sentencing Guidelines authorizes a fine of between $6,000 and $60,000. USSG §5E1.2.

**IV.	SENTENCING RECOMMENDATION**

      Based on a calculated total offense level of nineteen, the government recommends a sentence within the guidelines range of thirty to thirty-seven months incarceration. Moreover, the government recommends imposition of a fine between $6,000 and $60,000. The defendant should also be required to make restitution to the IRS in the amount of $16,591. Following the period of incarceration, the government recommends a period of supervised release of three years. A sentence within the recommended guidelines range would satisfy the sentencing considerations set forth in 18 U.S.C. § 3553(a) by reflecting the serious nature of the offense, the need to promote respect for the tax laws and the need to afford adequate deterrence to this defendant and others who would consider making a business of preparing false and fraudulent income tax returns.

      Very Truly Yours,

      MICHAEL J. GARCIA
      United States Attorney,
      Southern District of New York

By:   s/Michael P. Ben'Ary
      Michael P. Ben'Ary
      Special Assistant U.S. Attorney

cc:	*via electronic filing and email*
    James H.Rodio, Esq.
    jim.rodio@hklaw.com

    Stephanie Dunne, U.S. Probation Officer
    stephanie_dunne@nysp.uscourts.gov

| Tax_Period | Disposal Cd | Tax_Change | EITC_Change | Audit Results | Areas of Adjustment | Balance Outstanding |
|---|---|---|---|---|---|---|
| 200312 | 04 | $7,036.00 | $0.00 | TP Signed RAR | Sch C1, itemized Ded | $7,066.52 |
| 200312 | 04 | $1,591.00 | $0.00 | TP Signed RAR | First Page of RAR is Mi First Page of signed | $453.48 |
| 200312 | 09 | $6,370.00 | $0.00 | TP Signed RAR | RAR is Missing. Sch C1, itemized Ded per | $4,894.26 |
| 200312 | 09 | $5,398.00 | $0.00 | TP Signed RAR | Sch C1, itemized Ded | $4,176.42 |
| | | | | | | $16,590.68 |